Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**DAURY CONTRERAS ULERIO** | Criminal No. 19-568-4 (ES)<br><br>**OPINION & ORDER** |

**MCNULTY, DISTRICT JUDGE**

Before the Court is the motion of defendant Daury Contreras Ulerio for a reduction of sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (DE 84). The Government opposes the motion. (DE 87). This matter has been reassigned from Judge Salas to me for purposes of this motion. Having considered the parties' submissions, I decide this matter without oral argument. *See* Fed. R. Crim. P. 43(b)(4); *United States v. Styer,* 573 F.3d 151, 154 (3d Cir. 2009). For the following reasons, the motion is DENIED.

## I. BACKGROUND[1]

On February 13, 2020, Mr. Ulerio pleaded guilty to an indictment charging him with conspiring and agreeing with others to distribute and to possess with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, contrary to 21 U.S.C. §§

---

[1] Citations to documents in the record will be abbreviated as follows:
   Mot. = Mr. Ulerio's motion, DE 84
   Opp. Br. = Government's brief in opposition to the motion, DE 87
   Sentencing Tr. = Transcript of Mr. Ulerio's sentencing

841(a)(1) and (b)(1)(A), in violation of 21 U.S.C. § 846. (DE 38 & 58–61). On May 27, 2020, Mr. Ulerio was sentenced by the Honorable Esther Salas to a term of imprisonment of 46 months. (DE 78 & 81).

Mr. Ulerio has been in continuous federal custody since his arrest on February 27, 2019. (Opp. Br. at 3). He is currently being housed at Essex County Correctional Facility ("ECCF") pending transfer to a Bureau of Prisons ("BOP") facility. (*Id.*). The BOP estimates Mr. Ulerios' release date as July 2, 2022, meaning that he has approximately 17 months remaining. (*See id.*).

On December 7, 2020, Mr. Ulerio filed a motion "request[ing] consideration as allowed under 3553(a) for jail credits or a reduced sentence" based on the conditions caused by the COVID-19 pandemic.[2] (Mot. at 6 (ECF Pagination)). Mr. Ulerio does not explicitly cite to the First Step Act in his motion, though he mentions the COVID-19 pandemic and requests a reduction of sentence. I construe his motion as one made pursuant to § 3582(c)(1)(A).[3]

## II. LEGAL STANDARDS

Once a term of imprisonment has been imposed, the Court may modify it only under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797–98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)). As relevant here, § 3582(c)(1)

---

[2] Pursuant to the District of New Jersey's Standing Order 2020-08, the Court informed the Office of the Federal Public Defender of the pending *pro se* motion. When the Office of the Federal Public Defender declined representation of Mr. Ulerio, the Court ordered the Government to respond to the motion. (DE 14).

[3] To the extent Mr. Ulerio intended to raise some sort of civil constitutional claim(s) regarding the conditions of his confinement, he cannot do so in this closed criminal case.

provides as follows:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
>> (i) extraordinary and compelling reasons warrant such a reduction;
>>
>> [. . .]
>>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*See also United States v. Pawlowski*, 967 F.3d 327, 329–30 (3d Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement that, in relevant part, allows a court to grant compassionate release or a sentence reduction where: (i) extraordinary and compelling reasons warrant a reduction in a defendant's sentence; (ii) the defendant is not a danger to the safety of others or to the community; and (iii) release from custody complies with the section 3553(a) factors, to the extent applicable. U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 (U.S. SENTENCING COMM'N 2018).

**III. ANALYSIS**

Before proceeding to the merits of a motion for a reduction in sentence, a defendant must meet § 3582(c)(1)(A)'s exhaustion requirement, which requires either that that the defendant has exhausted all administrative remedies, or that, since the submission of a request to the warden, 30 days have passed without a decision being rendered. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Here, it is not clear that Mr. Ulerio has met this threshold requirement. The Government explains, however, that Mr. Ulerio cannot actually be considered for compassionate release by the BOP because he is not yet in BOP custody. (Opp. Br. at 4). Regardless, the Government argues, Mr. Ulerio is required to make a request for release, whether to ECCF or the BOP. (*Id.*). There is no indication that he has done so.

I agree that Mr. Ulerio is required to make some sort of request for release prior to filing a motion in court. *See United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *see also United States v. Carazolez*, No. 18-0081, 2020 WL 5406161, at *2 (D.N.J. Sept. 9, 2020) (finding that exhaustion requirement was met where an inmate made a request for compassionate release to the county facility where he was housed and to the federal facility where he was designated—both of which claimed to have no authority over the request). Mr. Ulerio's motion must be denied for this reason alone.

As set forth below, however, Mr. Ulerio's motion fails for additional reasons—namely, Mr. Ulerio's failure to demonstrate an extraordinary and

4

compelling reason for a potential sentence reduction and his failure to explain why the § 3553(a) factors favor his release.

Congress directed the Sentencing Commission to define the "extraordinary and compelling reasons" standard. *United States v. Alexander*, No. 19-0032, 2020 WL 2507778, at *3 (D.N.J. May 15, 2020). The Sentencing Commission issued a policy statement in which an application note lists three specific circumstances that qualify as extraordinary and compelling. Generally speaking, the enumerated circumstances include: (i) a terminal illness or a serious medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover; (ii) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; or (iii) certain family circumstances exist where the defendant would be the only available caregiver for his or her minor child, spouse, or registered partner. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). In addition, the Sentencing Commission included a catchall provision, which provides that "other reasons" may be sufficient if "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in [the enumerated] subdivisions." *Id.*, Application Note 1(D).

This policy statement, however, has not been updated since the First

5

Step Act was passed, and it was drafted to address motions made by the BOP, not by defendants. Because of this, courts have been vexed by the question of the significance of the Sentencing Commission's failure, as of yet, to amend the Guidelines to conform to the First Step Act.[4] I look to the Guidelines, application notes, and commentary for guidance. I will assume, however, that they do not limit what a court, within its discretion, may find "extraordinary and compelling."[5]

In the context of COVID-19-based motions for compassionate release, "[t]he 'extraordinary and compelling reasons' inquiry logically has two components: (a) identification of a medical condition that renders the defendant particularly vulnerable to serious consequences if infected with COVID-19; and (b) the likelihood of COVID-19 infection, with particular reference to conditions in the institution in which the defendant is incarcerated." *United States v. Moore*, No. 19-101, 2020 WL 4282747, at *3 (D.N.J. July 27, 2020).

Here, Mr. Ulerio has not addressed either factor: he has not set forth any medical condition which might place him at an increased risk of severe illness

---

[4]   The Commission has a number of long-standing vacancies, and lacks a quorum. *See Organization,* UNITED STATES SENTENCING COMMISSION, https://www.ussc.gov/about/who-we-are/organization (last visited Feb. 9, 2021).

[5]   There appears to be a growing consensus that section 1B1.13 does not limit the discretion of a court considering compassionate release under the First Step Act. *See United States v. Brooker*, 976 F.3d 228 (2nd Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) ("When a defendant exercises his new right to move for compassionate release on his own behalf, in other words, § 1B1.13 does not apply."); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) (holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("Section 1B1.13 addresses motions and determinations of the Director, not motions by prisoners.").

from COVID-19, nor has he suggested that he is more likely to contract COVID-19 at ECCF. To the contrary, Mr. Ulerio suggests that the very measures that ECCF has put in place to curtail the virus's spread are what justify his release. In particular, he explains that (1) attorney visits have been limited; (2) inmates must isolate and quarantine; (3) visitor access is restricted; (4) there is no access to religious services or clergy; and (5) there is limited access to medical care. (Mot. at 3–5). In other words, Mr. Ulerio's motion rests entirely on the existence of COVID-19 and the effects that the pandemic has had on the prison environment.

These generalized arguments about the existence of COVID-19 and the resulting effects it has in the prison system alone cannot justify compassionate release "especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597. Indeed, the measures Mr. Ulerio describes have often served as a basis for *denying* compassionate release to the extent that they demonstrate effective containment measures. *See e.g., Alexander*, 2020 WL 2507778, at *4.

Accordingly, Mr. Ulerio has not set forth the requisite extraordinary and compelling reasons to justify a sentence reduction and his motion must be denied for this reason, too. *See United States v. Munoz*, No. 15-00324, 2020 WL 7074351, at *3 (D.N.J. Dec. 3, 2020) (denying motion for compassionate release based on the defendant's failure to demonstrate an extraordinary and compelling reason for a sentence reduction).

Because the motion is denied for a failure to exhaust and a lack of

extraordinary and compelling circumstances, I do not address the section 3553(a) factors and dangerousness at length. *See Munoz*, 2020 WL 7074351, at *3; *United States v. Urzua*, No. 16-0312, 2020 WL 7586954, at *3 (D.N.J. Dec. 22, 2020). However, I note that Mr. Ulerio has not presented any arguments to mitigate or change Judge Salas's prior analysis of the section 3553(a) factors.[6] I am thus guided by the findings made by Judge Salas at sentencing, which still hold true today and justify Mr. Ulerio serving out his sentence as imposed.

For the foregoing reasons, Defendant's motion is DENIED.

## ORDER

IT IS THEREFORE this 10th day of February, 2021

ORDERED that Defendant's motion is DENIED.

/s/ Kevin McNulty
**Kevin McNulty, U.S.D.J.**

---

[6] In fashioning Mr. Ulerio's sentence within the guidelines range of 46 to 57 months, Judge Salas considered *inter alia* (1) the need to reflect the seriousness of the offense; (2) the nature and circumstances of the offense; (3) the need to promote respect for the law; (4) general deterrence; (5) specific deterrence; and (6) the need to avoid unwarranted sentencing disparities. Judge Salas was not as concerned with protecting the public from further crimes of the Defendant, and the Defendant's history and characteristics supported a sentence at the low end of the guidelines range.  (Sentencing Tr. 12:1–3; *id.* at 29:17–42:20).